UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RANDY LEE HALL,

    Plaintiff,

    v.

NATIONAL RAILROAD PASSENGER
CORPORATION ("AMTRAK");
JONATHAN STASKA, Engineer Driver;
DENISE HOGG, Conductor; MICHAEL
JOHN TORRENCE, Assistant Conductor,
BNSF RAILWAY COMPANY; and DOES
1 through 50 inclusive,

    Defendants.

No. C19-02312 WHA

**ORDER RE DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT**

**INTRODUCTION**

In this survival and wrongful death action where plaintiff's daughter died after a train hit her, defendant railroads bring two motions for summary judgment. For the following reasons, defendants' motions are **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Prior orders set forth the facts of this case (Dkt. Nos. 50, 126). The following facts are undisputed. On August 4, 2016, at approximately 6:45 p.m., plaintiff's 25-year old daughter Dejani Hall walked westbound along the south side of two railroad tracks near the intersection of Santa Fe Avenue and Glen Avenue in Merced, California. Defendant BNSF Railway

Company owned the tracks. The main track saw relatively frequent travel, averaging forty-six trains per day in both directions during August 2016 (Decl. Heikkila ¶ 12).

Unbeknownst to Ms. Hall, an Amtrak passenger train approached her from behind traveling on the track she walked along. Defendant Jonathan Staska, an Amtrak locomotive engineer, operated the train. Defendants Conductor Dennis Hogg and Assistant Conductor Michael Torrence, both Amtrak employees as well, attended to passenger duties in the trailing cars while the train approached Hall. At all times, Engineer Staska operated the train in compliance with the federal speed limits.[1]

When the train approached the Glen Avenue railroad crossing, Engineer Staska initiated the warning horn sequence for the crossing and reduced the train's speed as required. After the train passed through the crossing, Engineer Staska spotted Ms. Hall and began sounding the horn again, the train traveling at 59 miles per hour. Ms. Hall, wearing headphones, did not respond. Engineer Staska began initiating the service brake and continued sounding the horn.

Engineer Staska waited fifteen seconds after seeing Ms. Hall to apply the emergency brakes. At no point did Ms. Hall appear to react to the horn. Three seconds later, the train hit Ms. Hall traveling at 36 mph.

After the accident, Engineer Staska immediately made an emergency radio call to dispatch notifying them of the accident. The dispatcher was responsible for notifying emergency personnel and law enforcement to respond to the scene. Engineer Staska remained on the train, responsible for preventing the train from moving, communicating with dispatch, and moving the train at the direction of emergency personnel (Staska Dep. at 73–74; Decl. Heikkila ¶ 24).

Law enforcement responded to the scene first, followed by paramedics. When a Merced police officer arrived, he observed Ms. Hall still breathing, and began CPR until the ambulance arrived. Shortly after the ambulance arrived, the paramedics pronounced Ms. Hall dead at the scene. According to the ambulance report, Ms. Hall had sustained a depressed open skull

---

[1] The conductor is named Denise Hogg in the complaint, but the parties agree that his name is actually Dennis Hogg.

fracture, she was not breathing and had no pulse, and the monitor showed a flat line. According to the coroner's report, the paramedics found signs of obvious death including a large depressed skull fracture. The coroner declared the cause of death to be multiple blunt impact injuries and stated that the interval was "immediate." The death certificate states, in the cause of death section titled "interval between onset and death," "IMMED" — meaning immediate (Decl. Castillo Exhs. 18–20).

On August 2, 2018, Ms. Hall's father initiated this action *pro se* seeking damages for the death of his daughter. After appointment of counsel, he filed a second amended complaint on January 17, 2020. On April 10, 2020, plaintiff filed his third amended complaint, our operative complaint. The complaint alleges three claims for relief: Gross negligence and negligence of carrier against all defendants, dangerous condition creating risk of great bodily injury or death against Amtrak and BNSF, and wrongful death against all defendants. As discussed below, the only claims plaintiff now pursues are for negligence against Amtrak and Engineer Staska, and premises liability against BNSF. Amtrak, with its employees, and BNSF separately move for summary judgment.

This order follows full briefing and a telephonic hearing.

## ANALYSIS

Summary judgment is appropriate when there is no genuine dispute as to any material fact. A genuine dispute of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

1. **NEGLIGENCE CLAIM.**

Plaintiff's negligence claim contains three liability theories: Excessive speed, failure to slow or stop, and failure to render aid. Plaintiff concedes, however, that the excessive speed theory is preempted. And, plaintiff chooses not to address any of defendants' argument as to the failure to render aid theory. Thus, the only theory at issue is defendants' alleged liability for failing to slow or stop the train sooner to avoid hitting Ms. Hall.

Plaintiff expressly abandons his failure to slow or stop theory as to BNSF (the owner of the tracks). And, while plaintiff does not so expressly abandon the claim as to Conductor

Hogg and Assistant Conductor Torrence, plaintiff only argues defendants Amtrak and Engineer Staska are liable. This makes sense. The conductors did not operate the train; their duties remained in the passenger cars. Summary judgment is therefore granted in favor of all defendants as to plaintiff's excessive speed and failure to render aid claims and in favor of defendants BNSF, Conductor Hogg, and Assistant Conductor Torrence as to plaintiff's theory based on negligent failure to slow or stop the train.

In his opposition, plaintiff clarified that his negligence claim is based on Engineer Staska's negligent failure to slow or stop the train to avoid hitting Ms. Hall. More specifically, plaintiff alleges Engineer Staska should have initiated the emergency brakes sooner.

### A. PREEMPTION.

Relying on a footnote in *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 675 n.15 (1993), that explained the decision did "not address, the question of [the Federal Railroad Safety Act's] preemptive effect" on claims "for breach of related tort law duties, such as the duty to slow or stop a train to avoid a specific, individual hazard[,]" defendants argue that plaintiff's claim *is* preempted *absent* proof that a specific individual hazard arose.

"In all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citations and quotations omitted). Defendants thus "bear the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997) (citations and quotations omitted). To win preemption of a state law, "a litigant must point specifically to 'a constitutional text or a federal statute' that does the displacing or conflicts with state law." *Virginia Uranium, Inc. v. Warren*, 139 S.Ct. 1894, 1901 (2019).

Defendants do not highlight any provision of the FRSA or any regulation promulgated thereunder that would preempt plaintiff's claim. Nor do they explain why the federal speed limits at issue in *Easterwood* would bar a claim based on the negligent failure to slow or stop

4

to avoid a hazard. Instead, as discussed, defendants rely on dicta from *Easterwood* that expressly did not address such claims, arguing that "the claim that Engineer Staska negligently operated the train is subject to federal preemption because there is no evidence that a hazard was imminent before he initiated the emergency brake three seconds before impact" (Amtrak MSJ at 20).

As the Supreme Court explained in *Easterwood*, "[t]he common law of negligence provides a general rule to address all hazards caused by lack of due care . . . ." *Easterwood*, 507 U.S. at 675. Interpreting federal speed limit regulations, *Easterwood* held that the FRSA preempted the general rule provided by common-law negligence "*only insofar*" as the claim there alleged that the "train was traveling at an excessive speed." *Easterwood*, 507 U.S. at 676 (emphasis added). The Court based its holding on the fact that the Secretary of Transportation determined the federal maximum speed limits only after taking into account the hazards posed by track conditions. Thus, the Court found that the "speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation of the sort that respondent" sought to impose — namely, tort liability "for operating the train at an excessive speed." *Id.* at 673.

Here, plaintiff abandoned any portion of his claim based on excessive speed. What remains concerns not what speed the train had been traveling but instead the actions Engineer Staska took after spotting Ms. Hall in the path of his locomotive. No portion of this claim is impacted by *Easterwood*. And, any question concerning whether Engineer Staska could assume Ms. Hall would awaken to her danger and leave the tracks goes to the duty he owed Ms. Hall and the standard of care required, not preemption. This order thus denies defendants' request for an order holding that plaintiff's "claim is preempted until the moment Ms. Hall became a specific, individual hazard and collision was 'imminent'" (Amtrak MSJ at 22).

### B. NEGLIGENCE.

We now turn to the duty and standard of care Engineer Staska owed to avoid Ms. Hall. The parties do not present any California authorities specifically addressing a "duty to slow or stop" to avoid a hazard. California does, however, "impose [ ] upon a railroad company and its

5

train crewmen the duty to use reasonable care, corresponding to the circumstances constituting the probable danger, to avoid injury to persons traveling upon the public highway crossed by the company's tracks and trains." *Romo v. Southern Pac. Transp. Co.*, 71 Cal. App. 3d 909, 916 (1977) (citing to *Peri v. L.A. Junction Ry.*, 22 Cal.2d 111, 120–21 (1943)). This duty is not limited to crossings. *See Staggs v. Atchison, Topeka & Santa Fe Ry. Co*, 135 Cal. App. 2d 492, 500 (1955); *see also Power v. Union Pac R.R. Co.*, 655 F.2d 1380, 1384 (9th Cir. 1981) (interpreting Washington crossing-accident decisions and the restatement to apply same duty owed automobiles at crossings to pedestrians on tracks on private property). And, the amount of care that is "reasonable" varies in proportion to the circumstances constituting the probable danger. *Romo*, 71 Cal. App. 3d at 916.

The issue of the negligence in such cases, whether the railroad was negligent in the design and maintenance of the crossing or in the operation of the train, is ordinarily one of fact as in other negligence cases. *Ibid.* "Only where no fact is left in doubt and no deduction or inference other than negligence can be drawn by the jury from the evidence can the court say, as a matter of law, that negligence is established; even where the facts are undisputed, if reasonable minds may draw different conclusions upon the question of negligence, the question is one of fact for the jury." *Id.* at 915 (citation omitted).

Relying on *Power*, 655 F.2d at 1385, defendants assert that Engineer Staska had a right to assume that Ms. Hall would leave the tracks to avoid the approaching train and thus was not, upon the mere observation of Ms. Hall, under an immediate duty to slow or stop the train. Further, defendants argue that "because [Ms. Hall] showed no awareness of the train, [Engineer Staska] was also entitled to assume [Ms. Hall] would vacate the track once she noticed the train" (Amtrak MSJ at 20).

No California authorities so limit defendants' duty. Rather, the fact-inclusive approach California subscribes to puts to the jury the question of whether any assumption made by the engineer was valid. *Romo*, 71 Cal. App. 3d at 919, is illustrative:

> In [*Romo*] the conductor first saw plaintiff at a distance of 165 feet before the collision; he watched Romo approach the crossing, assuming that he was going to stop; not until Romo neared the

6

> crossing did the conductor realize that Romo was not going to stop; he called out to the engineer, but because the air horn was blowing, the engineer did not hear him and did not put the train into an emergency stop until after the collision. In view of Romo's proximity and failure to stop, the accident could not have been avoided even had the engineer heard the brakeman and had applied the emergency brake prior to the impact. From the evidence as to the operation of the train and the conduct of the train crew at the time and place of the accident, we conclude that reasonable minds could differ as to whether or not defendant exercised reasonable care under the circumstances. Thus, the issue of negligence was one of fact and not of law.

Notably, despite the engineer's assumption that Romo was going to stop, the appellate court still concluded that the train-handling evidence at the time and place of the accident could lead reasonable minds to "differ as to whether or not [the] defendant exercised reasonable care *under the circumstances*." *Ibid.*

So too here. Upon first seeing Ms. Hall, Engineer Staska may rightfully have assumed that Ms. Hall would awaken to her danger when she heard the train's horn. Perhaps that assumption remained reasonable as time passed. But, it may just as well have become unreasonable at some point during the fifteen seconds that passed between first spotting Ms. Hall and three seconds before the collision when Engineer Staska initiated the emergency brakes. Eighteen seconds is a long time for someone skilled like Engineer Staska to deal with these types of situations, enough time to hit the brakes sooner and perhaps save the life of the decedent — or so a reasonable jury could so conclude.

*Power*, a decision applying Washington law, does not hold otherwise. There, the plaintiff's daughter, amongst a group of friends, intentionally stood on the tracks and jokingly waved at the train. When her expression turning to fear as the train approached, the engineer attempted an emergency stop while the decedent attempted to jump out of the way. Tragically, she jumped too late. *Power*, 655 F.2d at 1385.

Every authority *Power* relied on (none from California) explained that while an engineer is entitled to assume that the person in peril will take steps to avoid the danger, the engineer is not entitled to act on that assumption if, after giving appropriate warnings, it appears the person does not hear the warning, is unable to obey it, or obviously intends not to obey the warning.

7

Applying these principles to the facts before it, *Power* provided:

> The duty of care expressed by the [Washington crossing-accident] cases and the Restatement (Second), then, is that the engineer here owed no duty to Marilyn to slow or brake when he merely observed her on or near the tracks. Rather, a duty of reasonable care obtained only when he realized that she had stepped on the tracks and intended to stay there despite her obvious awareness of the train's approach.

*Power*, 655 F.2d at 1385. The panel, above, described the duty in terms of the facts before it, thus describing the decedent's "obvious awareness of the train's approach." Had our facts been substituted, the duty expressed by the same authorities would have obtained once Engineer Staska saw Ms. Hall did not hear the warning. There is no dispute this occurred before Engineer Staska initiated the emergency brake. In fact, defendants argue that "because she showed no awareness of the train, [Engineer Staska] was also entitled to assume she would vacate the track once she noticed the train." Thus, under California law or *Power*, a duty arose at some point before Engineer Staska initiated the emergency brake. The jury must decide whether after seeing Ms. Hall, Engineer Staska used reasonable care, corresponding to the circumstances constituting the probable danger, to avoid injury to her. *Romo*, 71 Cal. App. 3d at 916.

Defendants also challenge the admissibility of plaintiff's expert's opinion and, absent his opinion, the sufficiency of plaintiff's evidence to prove Engineer Staska breached his duty of care or that the breach was a proximate cause of Ms. Hall's death. Even without plaintiff's expert's opinion, however, defendants still fail to meet their burden on summary judgment. Yes, defendant's expert may help the jury in determining from the undisputed facts whether Engineer Staska acted reasonably and whether his assumption that Ms. Hall would move had been reasonable. Defendants' expert may also guide the jury in deciding whether the accident could have been avoided absent Engineer Staska's breach. What defendants' evidence does not prove, however, is that no reasonable jury could find in favor of plaintiff on these two essential elements of his negligence claim. As discussed, reasonable minds faced with the undisputed evidence could draw differing conclusions on the disputed elements. These questions of fact must go to the jury. *Romo*, 71 Cal. App. 3d at 915.

For the reasons stated above, summary judgment on plaintiff's negligence claim as to defendants Amtrak and Engineer Staska is **DENIED**.

### 2. PREMISES LIABILITY CLAIM.

Premises liability is a form of negligence. *Brooks v. Eugene Burger Management* Corp., 215 Cal.App.3d 1611, 1619 (1989). To prevail on a claim for negligence, plaintiff must establish that "defendant had a duty to plaintiff, that the duty was breached by negligent conduct, and that the breach was the cause of damages to the plaintiff." *Ibid.* Premises liability is based on the general duty of the owner of property "to exercise ordinary care in the management of such premises in order to avoid exposing persons to an unreasonable risk of harm." *Ibid.* (citation omitted). This general duty is codified in Section 1714 of California's Civil Code, which provides that "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property . . . ."

To prevail on a premises liability claim, "a plaintiff must establish that the defendant owned or controlled the property, that the defendant was negligent in the use or maintenance of the property, that the plaintiff was harmed, and that the defendant's negligence was a substantial factor in causing the harm." JUDICIAL COUNCIL OF CALIFORNIA CIVIL JURY INSTRUCTIONS, No. 1000. "A person who owns or controls property is negligent if he or she fails to use reasonable care to discover any unsafe conditions and to repair, replace, or give adequate warning of anything that could be reasonably expected to harm others." CACI No. 1001. Under some circumstances, however, a property owner may owe no duty or only a limited duty to individuals who come onto their land.

The operative complaint alleges a premises liability claim against both Amtrak and BNSF. It is undisputed, however, that BNSF owned the subject railroad track and the right-of-way where the accident occurred, not Amtrak (Decl. Leite ¶ 3). A defendant cannot be held liable for a dangerous condition of property it did not own, possess, or control. The duty to protect individuals entering one's property "is grounded in the possession of the premises and the attendant right to control and manage the premises." *Sprecher v. Adamson Companies*, 30

9

Cal.3d 358, 368 (1981). Where the absence of ownership, possession, or control has been conclusively established, summary judgment is proper. *Isaac v. Huntington Memorial Hosp.*, 38 Cal.3d 112, 134 (1985). Plaintiff offers no argument or evidence attempting to establish that Amtrak otherwise controls the track. Thus, plaintiff's premises liability claim against Amtrak fails as a matter of law.

Turning to defendant BNSF, plaintiff alleges that the railroad company failed to warn of dangerous conditions. Defendants contend there was no duty to warn as a matter of law because the danger of being hit by an approaching train is obvious to a person who is walking on the tracks like Ms. Hall. This order agrees.

As discussed, a landowner may owe a duty under *Rowland* to take reasonable measures to remedy a dangerous condition where it is foreseeable that a person on the premises will be harmed — even where the dangerous condition is obvious. *See Osborn v. Mission Ready Mix*, 224 Cal.App.3d 104, 119 (1990). The obviousness of the danger may, however, negate the duty to warn. *Ibid.* In *Christoff v. Union Pacific R.R. Co.*, 134 Cal. App. 4th 118 (2005), for example, the plaintiff suffered an injury while walking along a narrow metal grid on a railroad bridge that ran next to the tracks. After he was already on the bridge, a train approached and knocked him off, resulting in serious injury to the plaintiff. *Id.* at 126–127. The court pointed to the plaintiff's admission that he "knew it would be hazardous to be on the bridge the same time as a train," and further noted that the plaintiff had "observed the narrowness of the grid area." *Ibid.* The court found that "[a]ny reasonable person would know that standing within a few feet of a high speed freight train is dangerous." *Ibid.* (citation omitted). Therefore, the court found that the general rule — that "an owner or possessor of land owes no duty to warn of obvious dangers on the property"— applied and that the railroad owed no duty to the plaintiff in that case. *Ibid.*

So too here. The danger to Ms. Hall of walking along railroad tracks, with or without headphones, where trains frequently run (or to any pedestrians walking on the tracks in this area) was obvious. While her death was tragic, under the circumstances here, BNSF owed no duty to warn.

### 3. PUNITIVE DAMAGES.

Plaintiff argues that he is entitled to punitive damages based on his "position that Engineer [Staska]'s conduct of waiting until 2 seconds before he struck Dejani Hall when he knew she did not see the train and had every reason to believe she could not hear the emergency horn was such a departure from reasonable and ordinary care that it constituted a willful and knowing disregard for her rights and safety" (Opp. at 16–17).[2]

Something more than the commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or malice, as a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that his conduct may be called willful or wanton. *Taylor v. Superior Court*, 24 Cal. 3d 890 (1979). Plaintiff provides no such evidence. To the contrary, defendants introduce evidence that Engineer Staska began sounding the horn and applying the train's service brakes within one second of seeing Hall.

### 4. SURVIVAL CLAIM.

A survival action cannot be maintained if the injury causing death is simultaneous with death. *Pease v. Beech Aircraft Corp.*, 38 Cal.App.3d 450, 459-60 (1974). Defendants present evidence tending to establish that Ms. Hall died instantly. The coroner's report found signs of obvious death including a large depressed skull fracture. The coroner stated that the death was "immediate." Defendants also submit the ambulance report noting that the paramedics who arrived on the scene found the decedent had sustained an open skull fracture, flat lined, was not breathing, and did not have a pulse (Decl. Castillo Exhs. 18–20).

Plaintiff does not object to defendants' evidence. He does, however, provide two police reports that suggest Ms. Hall was still breathing when the police arrived. The first report includes the supplemental narrative of Merced Police Officer Cruz, who arrived on the scene approximately four minutes before the paramedics. "It appeared to [Officer Cruz] as if [plaintiff] may [have] been breathing[,]" so he began to administer CPR until the paramedics

---

[2] Plaintiff's expert witness concedes that Engineer Staska activated the emergency brakes three, rather than two, seconds before the impact.

arrived (Opp. Exh. B). Merced Police Officer Jenkins, the author of the other report, wrote that he saw "Officer Cruz had attempted chest compressions" (Opp. Exh. C).

Although the police report may not be admissible at trial, this order will accept the observations quoted above as provable at trial with appropriate witnesses.

Even if admissible, defendants urge that the fact that an officer performed chest compressions on Ms. Hall does not establish she survived for any period of time. But defendants ignore Officer Cruz's statement that Ms. Hall appeared to be breathing. A jury must decide this question of fact.

Defendants also rehash arguments from their prior motions claiming that the survival claim is time barred. As decided in a prior order (Dkt. No. 126), plaintiff's survival claim relates back to the original wrongful death claim, which plaintiff filed within the two-year statute of limitations for a survival claim.

## CONCLUSION

For the reasons stated herein, defendants' motions for summary judgment are **GRANTED** in part and **DENIED** in part. Specifically, this order grants summary judgment in favor of defendants Hogg and Torrence on all claims, in favor of BNSF on plaintiff's negligence claims, in favor of Amtrak on plaintiff's premises liability claim, and in favor of defendant Staska on plaintiff's premises liability claim and his claim for failure to render aid. Summary judgment is **DENIED** as to plaintiff's claim against defendants Amtrak and Engineer Staska based on the negligent failure to slow or stop the train. Plaintiff's survival claim survives, but not his claim for punitive damages.

**IT IS SO ORDERED.**

Dated: August 21, 2020.

_____
WILLIAM ALSUP
United States District Judge

12